UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JIMMIE JARRELL,

    Plaintiff,

v.

AMERIGAS PROPANE, INC.,

    Defendant.

Case No. 16-cv-01481-JST

**ORDER GRANTING FINAL APPROVAL AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

Re: ECF Nos. 44, 45

Before the Court are Plaintiff Jimmie Jarrell's unopposed motions for final approval of the class action settlement, ECF No. 44, and for attorneys' fees, costs, and an incentive award to the named plaintiff, ECF No. 45. The Court granted preliminary approval of the settlement on August 4, 2017, and held a fairness hearing on January 11, 2018. ECF Nos. 43, 48. As ordered by the Court, counsel and the settlement administrator filed supplemental declarations in support of Jarrell's motion for attorneys' fees and costs on January 25 and February 6, 2018. ECF Nos. 51, 52, 54. The Court will grant the motion for final approval and grant in part and deny in part the motion for attorneys' fees, costs, and incentive award.

## I.    BACKGROUND

Plaintiff Jimmie Jarrell brings this wage and hour class action against Defendant AmeriGas Propane, Inc., on behalf of himself and other individuals who are or have been employed by AmeriGas as service technicians. The alleged violations concern meal and rest periods, payment for on-call time and travel time, vacation pay, and accuracy of wage statements.

On August 4, 2017, the Court conditionally certified a settlement class and granted preliminary approval of the class action settlement agreement. ECF No. 43. The settlement class consists of "[A]ll persons employed by AmeriGas as a Service Technician (a non-exempt or hourly position) in California from February 16, 2012, through the date of preliminary approval."

Id. at 4 (citation omitted) (alteration in original).

The settlement provides for a common fund of $800,000, including: (1) payouts to class members; (2) attorneys' fees of not more than $266,640 (33.33% of the common fund); (3) litigation costs and expenses not to exceed $35,000; (4) settlement administration costs, estimated to be $20,000; (5) an incentive award to Jarrell, not to exceed $10,000; (6) a $30,000 payment to the California Labor Workforce Development Agency; and (7) payroll taxes. ECF No. 37-1 at 30. Class member payouts will vary based on the number of weeks each class member worked during the class period. Id. at 33. Current employees who do not opt out will automatically receive a payout, whereas former employees must submit a claim form. Id. at 68, 86.

At the time of preliminary approval, counsel estimated that there were 231 class members. ECF No. 37-1 at 3. However, the final class list included 283 members. ECF No. 47 at 5.

The required notice to federal and state attorneys general under the Class Action Fairness Act, 28 U.S.C. § 1715(b), was sent on May 5, 2017. ECF No. 39 at 2. This notice occurred more than 90 days before the date of this order, as required by 28 U.S.C. § 1715(d).

## II.     FINAL APPROVAL OF CLASS ACTION SETTLEMENT

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Id. at 1026. To assess a settlement proposal, the district court must balance a number of factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004). There is no governmental participant in this case, so the Court need not consider that factor.

1      **A.**      **Adequacy of Notice**

2      A court must "direct notice [of a proposed class settlement] in a reasonable manner to all

3 class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must

4 be notified of a proposed settlement in a manner that does not systematically leave any group

5 without notice." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688

6 F.2d 615, 624 (9th Cir. 1982) (citation and internal quotation marks omitted).

7      The Court approved the parties' proposed notice procedures when it granted preliminary

8 approval. ECF No. 43 at 14-15. Rust Consulting, Inc., the settlement administrator, timely mailed

9 the Court-approved notices to 283 class members, 120 of which were current employees at the

10 time of preliminary approval. ECF No. 47 at 5. Fifteen of these notices were returned as

11 undeliverable, but Rust was able to locate more current addresses for ten class members and re-

12 mailed the class notice to those addresses. Id. at 6. Of those ten notices, two were returned as

13 undeliverable. Id. Thus, 7 out of 283 class members, or approximately 2.5% of the class, did not

14 receive a class notice. Id. Rust also established a toll-free telephone number for class members to

15 call with questions about the settlement, as well as a website providing information about the

16 proposed settlement. Id. at 4.

17      The Court finds that the parties have provided adequate notice to class members.

18      **B.**      **Fairness, Adequacy, and Reasonableness**

19      The Court analyzed the necessary factors, except for the reaction of class members, and

20 found the settlement to be fair, adequate, and reasonable when it granted preliminary approval to

21 the agreement. ECF No. 43 at 11-14. The Court likewise found it proper to conditionally certify

22 the proposed settlement class. Id. at 3-8.

23      The Court finds no reason to alter either of these conclusions now that class members have

24 had been provided notice and an opportunity to be heard, and the settlement is before the Court for

25 final approval. The reaction of the class was overwhelmingly positive. No objections were

26 received, and only three class members, or approximately 1% of the class, opted out. ECF No. 47

27 at 6. "[T]he absence of a large number of objections to a proposed class action settlement raises a

28 strong presumption that the terms of a proposed class settlement action are favorable to the class

members." In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); see also Churchill Vill., 361 F.3d at 577 (affirming approval of settlement that received 45 objections (.05%) and 500 opt-outs (.56%) out of 90,000 class members).

In addition, approximately 47% of former employee class members (77 out of 163) submitted a claim form. ECF No. 47 at 6. When combined with the 120 current employee class members who will receive a payout, this means that 197 out of 283 class members, or nearly 70%, will receive a payout. The average recovery per class member will be over $4000 before fees, and nearly $2500 after fees.[1]

After reviewing all of the required factors, the Court continues to find the settlement fair, reasonable, and adequate, and certification of the settlement class to be proper. Plaintiffs' motion for final approval of the settlement is granted.

## III.    ATTORNEYS' FEES AND COSTS

### 1.    Attorneys' Fees

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011). "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." Id. "Applying this calculation method, courts [in the Ninth Circuit] typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."[2] Id. (quoting Six (6) Mexican Workers v.

---

[1] As discussed below, the Court awards $255,000 in attorneys' fees and costs to class counsel and $5,000 to the named class representative. Deducting these amounts, as well as the $30,000 payment to the California Labor Workforce Development Agency and estimated $20,000 in settlement administrator costs, leaves $490,000 to be distributed to class members.

[2] Plaintiff acknowledges this 25% benchmark but argues that "the custom and practice in class actions is to award approximately one-third of a fund as a fee award." ECF No. 45 at 12. However, he cites only a California appellate court case, which in turn cites an Eastern District of Texas case, to support that proposition. Id. (citing Chavez v. Netflix, Inc., 162 Cal. App. 4th 43,

Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)).  The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors."  Six (6) Mexican Workers, 904 F.2d at 1311.  When considering whether to depart from the 25% benchmark, courts consider a number of factors, including whether class counsel "'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis."  In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002) (internal quotation marks omitted)).  The "most critical factor" in determining appropriate attorneys' fee awards "is the degree of success obtained."  Hensley v. Eckerhart, 461 U.S. 424, 436 (1983).

Plaintiff's counsel here seek a fee award of 33.33% of the common fund.  When the Court granted preliminary approval, it commented that, "based on the Court's preliminary review of the docket, the Court sees no special circumstances that would warrant a significant departure from the benchmark in this case."  ECF No. 43 at 13.  After a more thorough review of the record, including class counsel's declarations in support of their fees motion, the Court now concludes that a slight upward adjustment – to 30% of the common fund – is warranted based on several factors, including the results achieved, the risk of non-recovery, and the fact that no class member has objected to the proposed award.

Comparing a percentage fee award to the lodestar "provides a check on the reasonableness of the percentage award."  Vizcaino, 290 F.3d at 1050.  Percentage awards in the range of one to four times the lodestar are common.  Id. at 1051 n.6 (finding a range of 0.6 to 19.6 in a survey of 24 cases, with 83% in the range of 1.0 to 4.0 and 54% in the 1.5 to 3.0 range, and citing In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 341 (3d Cir. 1998)

---

66 n.11 (2008) (quoting Shaw v. Toshiba Am. Info. Sys., Inc., 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000))).  These cases do not speak to the custom and practice in the Ninth Circuit.

("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." (quoting 3 Newberg § 14.03 at 14-15))). To "determin[e] the amount of a reasonable fee" under the lodestar method, a court calculates "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433. "[T]he determination of fees 'should not result in a second major litigation,'" and "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal . . . is to do rough justice, not to achieve auditing perfection." Fox v. Vice, 563 U.S. 826, 838 (2011) (quoting Hensley, 461 U.S. at 437).

Class counsel's supplemental declaration estimates the lodestar to be $220,300.00, excluding paralegal work. ECF No. 51 ¶ 22. This consists of 362.3 hours spent by six different attorneys, with a range of three to twenty-two years' experience. Id. ¶¶ 7, 14, 18-22. After reviewing the number of hours claimed by each timekeeper, the summaries of work performed by each timekeeper, and the requested hourly rates, the Court finds the claimed lodestar to reflect a reasonable number of hours at reasonable hourly rates. A 30% fee award of $240,000 results in a multiplier of 1.09, which is well within the range of reasonableness.

The Court awards 30% of the common fund, or $240,000, in attorneys' fees.

### 2.  Costs

Class counsel submitted an accounting report showing costs of $15,237.99, including mediation charges, filing fees, service of process fees, legal research fees, postage, and travel costs. Id. ¶ 23 & Ex. 1. They have reduced their request for costs to $15,000 "to offset the few meal costs and instances where hotel rooms were difficult to secure without incurring above-average rates." Id. ¶ 24. This is well below the $35,000 maximum amount for litigation costs and expenses contemplated in the settlement agreement, and no class member objected to the costs request. The Court has reviewed the documentation submitted by counsel and finds the claimed costs to be reasonable.

Rust Consulting has submitted an invoice reflecting $14,377.64 in fees and costs incurred to date, and an estimated $6,127.34 in future fees and costs to fulfill its duties under the settlement agreement, for a total of $20,504.98. ECF No. 54 ¶¶ 3-6 & Ex. A. Rust requests $20,000 because

that is the maximum amount allowed under the settlement agreement. Id. ¶ 4; ECF No. 37-1 at 30. This amount is reasonable. Payments to Rust must not exceed the lesser of $20,000 or the actual final invoiced amount.

## IV.    INCENTIVE AWARD

Finally, Plaintiff requests an incentive award of $10,000 to Jimmie Jarrell, the single named class representative. Incentive awards "are discretionary, and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958-59 (9th Cir. 2009) (citation omitted). Courts evaluate incentive awards individually, "using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003) (citation, internal quotation marks, and alterations omitted). Indeed, "courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013). "To determine the reasonableness of an incentive payment, courts consider the proportionality between the incentive payment and the range of class members' settlement awards." Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014). An award of $5,000 "is presumptively reasonable," id., and "incentive payments of $10,000 or $25,000 are quite high." Harris v. Vector Mktg. Corp., No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012).

In this case, Class Representative Jimmie Jarrell estimates that he spent "well over 40 hours" on this litigation, including "traveling to the mediation in this matter, working with attorneys, and completing tasks given to me by my lawyers." ECF No. 45-2 ¶ 14. His contributions include communicating with counsel, reviewing documents, identifying potential witnesses, and "bringing certain issues that are involved in this matter to my counsel's attention, and explaining the factual background that was used to prosecute the claims in this case." Id.

¶¶ 8-11.  Jarrell was not deposed, and he did not sign a release that was broader than those of other class members.  Neither the tasks Jarrell performed nor the time he spent doing them go beyond what would be expected of any class representative.  In addition, he was not a current employee during the pendency of this lawsuit and therefore did not risk retaliation by AmeriGas.  ECF No. 45-2 ¶ 2 (employment "ended on or about April 6, 2015"); ECF No. 1-1 at 5 (complaint filed on February 16, 2016).

An incentive award is warranted based on Jarrell's contributions to the case, but the presumptively reasonable $5,000 award is sufficient.  This award is more than the average class recovery before fees, and more than double the average class recovery after fees.

## CONCLUSION

The Court grants final approval of the proposed settlement and grants in part and denies in part Plaintiff's motion for attorneys' fees, costs, and incentive award.  The Court will separately enter a modified version of the parties' proposed judgment.

**IT IS SO ORDERED.**

Dated:  April 5, 2018

_____
JON S. TIGAR
United States District Judge